IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFREDO PALLARES RAMIREZ, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | CIVIL ACTION NO. H-09-0062 |
| v. | § | |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Alfredo Pallares Ramirez, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his state felony conviction for aggravated robbery. Respondent filed a motion for summary judgment (Docket Entry No. 12), to which petitioner filed a response (Docket Entry No. 13).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

## I.   PROCEDURAL BACKGROUND

A jury found petitioner guilty of aggravated robbery in Harris County, Texas, and assessed punishment at twenty-five years incarceration. The conviction was affirmed on appeal. *Ramirez v. State*, No. 14-05-01077-CR (Tex. App. – Houston [14th Dist.] 2007, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused discretionary review. *Ramirez v. State*, PDR No. 1342-07. Petitioner's state habeas

application was denied by the Texas Court of Criminal Appeals without a written order on the findings of the trial court. *Ex parte Ramirez*, No. 71,508-01.

Petitioner raises the following grounds for federal habeas relief:

(1)   His out-of-court and in-court identifications were faulty and unreliable.

(2)   Ineffective assistance of trial counsel

    (a)   in failing to investigate and present alibi witnesses;

    (b)   in failing to move to suppress the involuntary statement;

    (c)   in failing to object to the out-of-court and in-court identifications;

    (d)   in selecting members of the jury in a discriminatory manner; and

    (e)   due to an actual conflict of interest.

(3)   The trial court erred in

    (a)   excluding specific criminal conduct evidence of the complainant; and

    (b)   admitting petitioner's statement into evidence without determining its voluntariness.

Respondent argues that these claims are procedurally barred and/or without merit.

## II.  THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme

Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell,* 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

### III.  MISIDENTIFICATION

Petitioner claims that his conviction was obtained by use of faulty and unreliable in-court and out-of-court identifications because he was the only Hispanic individual present in both instances.

Petitioner's purported constitutional grounds for this claim are far from clear.  In arguing that his conviction was the result of "misidentification," petitioner appears to be challenging the sufficiency of the evidence.  A challenge to the factual sufficiency of the identity evidence would not be a cognizable ground for federal habeas relief. *See Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993) (holding that factual sufficiency of the evidence cannot be challenged on federal habeas).

A challenge to the legal sufficiency of the evidence to support petitioner's identity (and hence his conviction) would fall under *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979), requiring him to prove that, after reviewing the evidence in the light most favorable to the State, no rational trier of fact could have found the essential elements of the offense, including petitioner's identity.  The state appellate court found the evidence legally sufficient to support petitioner's conviction, including the issue of his identity:

Appellant challenges the legal and factual sufficiency of the evidence identifying him as the robber because: (1) the complainant's description of the robber as being Hispanic and wearing a shirt was so general as to be meaningless; (2) the complainant told police that the robber was wearing a shirt, but the police report indicated that the complainant told police the robber was not wearing a shirt; (3) appellant testified that he was not wearing a shirt that night and his videotaped statement confirmed that fact; (4) appellant's body is covered with tattoos which the complainant would have seen and noted if appellant had robbed him without a shirt on; and [(5)] the complainant lost his eyeglasses after the robbery so that his subsequent identification of the appellant was unworthy of belief.

In reviewing legal sufficiency, we consider all of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In this case, the complainant positively identified appellant as the robber at trial and testified that, during the robbery, appellant had pointed a Tech-9 [FN2] semiautomatic pistol at him. When police arrived, the complainant went in their patrol car with them to look for the robber, whom the complainant described as a Hispanic male wearing a white t-shirt. When they came upon appellant, the complainant's sight was 'kind of fuzzy' from that distance because he had lost his eyeglasses while running away from the robber, but he testified that he could still recognize appellant as the robber. When the police then ordered appellant to 'freeze,' he tried to run away, but was soon apprehended, and the Tech-9 handgun, wrapped in a t-shirt, was recovered. While appellant was sitting in the back of the police car, the complainant positively identified appellant as the robber. Although the complainant still did not have his eyeglasses at that time, he testified that he was nearsighted but could see well that close. He also stated that he had been wearing his eyeglasses during the robbery, which occurred on a well lit street, so he had seen, and could remember, appellant's face well.

FN2. The complainant recognized the gun as a Tech-9 from having seen one in a gun magazine.

One of the police officers dispatched to the scene confirmed that, when they saw appellant walking down the street with something wrapped in a t-shirt, the complainant immediately recognized appellant as the robber and later

positively identified him. The officer also recalled that when appellant was arrested, he was calm and collected and said: 'Do me for the gun. I can't go down for the robbery.' Although the officer testified that the complainant had described the robber as wearing no shirt and blue shorts (rather than the blue jeans and no shirt he was wearing when arrested), he also stated that it is not unusual for people to give a description that is not exact because it is easier for people to recognize somebody than to describe them and that the complainant was very sure that appellant was the robber when he identified him. Appellant also admitted to owning the gun in evidence. Viewed in the light most favorable to the verdict, this evidence is legally sufficient to prove that appellant was the person who committed the robbery[.]

*Ramirez*, at 1-2 (citations omitted).

Based on the state appellate court's findings and this Court's own review of the record, the evidence in the record is legally sufficient to support petitioner's conviction for the reasons set forth by the state court of appeals.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

6

deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness

7

does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges the following instances of ineffective assistance of trial counsel, each of which is addressed separately.

A.     Failure to investigate and present alibi witnesses

Petitioner argues that trial counsel failed to investigate and call three alibi witnesses who would have testified that petitioner was at his brother's house when the underlying robbery took place. In rejecting this argument on collateral review, the trial court made the following relevant findings:

> 1.     Applicant fails to allege sufficient facts which, if true, would demonstrate that an unnamed alibi witness was available to testify at the time of trial and that such testimony would have benefited the applicant's defense, namely that there is a reasonable probability that the presentation of such witness would have resulted in a verdict of "not guilty."

> \*     \*     \*     \*

> 3.     Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

> 4.     The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Ramirez*, pp. 41-42 (citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief. *Id.*, at cover.

8

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses's testimony is from the petitioner, this Court views claims of ineffective assistance with great caution. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Speculation as to what a potential witness might have said is insufficient to show a reasonable probability that, but for counsel's failure to investigate and subpoena the witness, the result of the trial would have been different. *See U.S. v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). Hypothetical or theoretical testimony will not justify the granting of federal habeas relief. *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1981).

Petitioner testified in his own defense at trial that he used his semiautomatic weapon to strike and rob an individual the evening of the offense, but that the person he robbed was someone other than the complainant. In his instant petition, petitioner now argues that it was impossible for him to have robbed the complainant because he was at his brother's house at the time, talking on a cell phone to a girlfriend, in the presence of his brother and a friend of the family. (Docket Entry No. 13, pp. 1, 3.) However, petitioner submits no affidavits of these potential witnesses or other probative summary judgment evidence establishing their proposed testimony. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (holding that a petitioner must establish with probative evidence the proposed testimony, the availability of the witness to testify, and that the testimony would have been admissible and favorable). Petitioner's conclusory allegations regarding the omitted witnesses are

9

insufficient to raise a genuine issue of material fact precluding summary judgment regarding counsel's performance. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.").

Even so, it is difficult to perceive how petitioner believes these omitted witnesses would have established his innocence. Assuming they would have testified that they were with petitioner at a relative's house at the time the complainant was robbed, petitioner himself testified at trial that he was out robbing someone else at the time. Petitioner never testified that he was at a relative's house when the complainant was robbed; he instead argued as his defense that the wrong robbery victim had identified him as his assailant.

Regardless, petitioner presents no probative evidence that his trial counsel did not investigate these alleged alibi witnesses. None of the potential witnesses has testified on the record or by affidavit that trial counsel never contacted him or her. The record before this Court does not negate the possibility that defense counsel investigated the witnesses but decided, as a matter of professional judgment, not to present them. To the extent petitioner complains that counsel failed to present the witnesses at trial, he does not establish that counsel's decision was an unreasonable trial strategy under the circumstances of this case.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record. No

basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

B.    Failure to move to suppress the involuntary statement

Petitioner argues that he confessed to committing an armed robbery following his arrest, but that the person he robbed was not the complainant. He contends that defense counsel should have moved to suppress the videotaped confession as "involuntary" because it was not a confession to the robbery for which he was arrested and charged. The record shows that defense counsel objected to the videotape on grounds other than involuntariness, both before and during trial, but that the trial court overruled the objections. R.R. Vol. 3, pp. 3-9, 97.

In rejecting petitioner's argument on collateral review, the trial court made the following relevant findings:

3.    Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

4.    The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Ramirez*, p. 42 (citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief. *Id.*, at cover.

11

In his response to the pending motion for summary judgment, petitioner argues as follows:

> Counsel was fully aware that my statement was in reference to a different incident that was not reported. I was under the impression that I was in fact arrested for that particular robbery, but not [complainant's] robbery. Upon my first meeting with counsel, I found out who I was accused of robbing, only to find out that I did not rob him. Counsel should have moved for a hearing to bring this to the attention of the court so that it could not be used as evidence at my trial since it was not related to [complainant's] robbery incident. Knowing all of this, counsel failed to ask for a hearing to let the court determine before trial if it was made under voluntary circumstances and willingly.

(Docket Entry No. 13, p. 3.) To the extent petitioner faults defense counsel for not informing the trial court that the confession was to a different robbery incident, the record shows that counsel did raise such objection during a pretrial hearing and that the trial court denied the objection:

> THE COURT:   And the Defense, I believe, contends that the statement that he's given relates to a separate incident that doesn't involve this alleged aggravated robbery and, therefore, is irrelevant.
>
> DEFENSE COUNSEL:   That's correct.
>
> THE COURT:   And the State's position is that the Defendant, by his own admission on the tape, admits that he was messed up on Xanax and doesn't have a clear memory of the events.
>
> THE STATE:   That's my position.
>
> THE COURT:   And essentially describes what occurred the night before to the best of his memory and the description is somewhat different than the State's complainant will testify to.

THE STATE:          Correct, Judge.

THE COURT:          And I don't know the complainant's version; but given the allegations in the indictment, I'm guessing that he was essentially threatened with a deadly weapon, a firearm, and the Defendant in his statement indicates that he didn't have a firearm, that he demanded some money and the complainant did not comply and that he hit him, he believes, maybe only once and then ran away and that the complainant was Anglo or maybe Hispanic.

And that in further questioning by the officer about a gun, he claims he doesn't have any recollection or denies a gun specifically and doesn't remember his arrest and says this happened, he thought, around or on Lorraine Street, which the State has now found is about three blocks away from the alleged incident.

And at the end of the tape, he indicates in questioning by the officer as to whether the complainant could be an African-American male, indicates that he didn't think so twice. He also states on the tape, which is part of [the defense] theory, that when they brought this black guy up to the car, [petitioner] didn't know who he was. And according to the State that was when the I.D. was made.

So – however, I would also add that at least on one occasion, and maybe more, the officer ascertained that the event that the complainant – the Defendant was recounting occurred the night before and the Defendant said that was the only thing he had done.

So there was no miscommunications about when they were discussing – what time frame we're talking about. It's not as though [petitioner] confessed to an aggravated robbery that may have – or a robbery that may have occurred three or four days before. So essentially what we've got is, you know, considerable ambiguity on the tape.

And my feeling after watching it is that it gives the Defense something to argue. It certainly gives the State something to argue. I am not convinced that he's not recounting either his memory, impaired as it was by his own admission, or wasn't being forthcoming. I think that's equally plausible to the Defense's argument that he was describing an event totally different.

13

So unless there's some objection to its admissibility, other than it's irrelevant, I will be allowing the tape-recorded statement in.

\*   \*   \*   \*

So if the Defense's contention is that it's not admissible because it doesn't relate to this alleged incident, I'm overruling that.

\*   \*   \*   \*

I think it's – it's admissible. Ultimately it will be up to the jury, I suppose. But there's enough similarities – there's enough similarities in the sense of the time frame, the fact that he admits he was messed up, he doesn't seem to have either a good recall of the event itself or the rendition.

R.R. Vol. 3, pp. 3-7. Thus, petitioner is incorrect in asserting that trial counsel failed to inform the court that his confession was to a different robbery, or that he failed to seek a hearing on the admissibility of the statement for that reason.

Petitioner's related claim – that the confession was involuntary – is based only on conclusory allegations lacking probative support in the record. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang. v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). The Fifth Circuit holds that, absent evidence in the record, a court cannot consider a petitioner's "bald assertions on a critical issue in his habeas petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Consequently, "the

14

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

To the contrary, the record shows that Sergeant Garcia, who took petitioner's statement, advised him of his rights, including the right to counsel, the right to remain silent, and the right to terminate the interview at any time. R.R. Vol. 3, pp. 95-96. Garcia testified that petitioner indicated his understanding of his rights, and that petitioner disclosed the facts of a robbery he had committed that particular evening.  The record as to the totality of the circumstances in the instant case does not show that petitioner's confession was involuntary. That the statement petitioner gave was subsequently used in a purportedly different criminal prosecution did not retroactively render the statement "involuntarily" or "unwillingly" made. The jury was able to consider the statement, hear plaintiff's claim of mistaken identity, and determine the statement's evidentiary weight.  Petitioner fails to show that, had counsel challenged the voluntariness of petitioner's statement on the basis of it being for a different robbery, the challenge would have been sustained and the statement excluded.  Absent such proof, the failure to make meritless objections does not result in the ineffective assistance of counsel. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that *Strickland* does not require trial counsel to make futile or meritless  objections).

The state habeas court denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.  No

basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

C.    Failure to object to out-of-court and in-court identifications

Petitioner complains that trial counsel should have objected to the complainant's in-court and out-of-court identifications of him as his assailant because petitioner was the only Hispanic individual present on both occasions. The complainant had reported his assailant as being Hispanic.

In his response to the motion for summary judgment, petitioner asserts that his in-court identification was impermissibly suggestive because "I was the only hispanic man in the entire courtroom at trial. [The complainant's] family was the only ones present in the audience! What could be more suggestive?" (Docket Entry No. 13, p. 5, emphasis in original.) Under Fifth Circuit precedent, "it is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997).

The test for whether an identification posed a very substantial likelihood of misidentification is governed by the Supreme Court's decision in *Neil v. Biggers*, 409 U.S. 188, 199 (1972). In *Biggers*, the Court outlined five factors for consideration: (1) the opportunity of the witness to observe the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's level of certainty; and (5) the time between the crime and the identification. *See Rogers*, 126 F.3d

at 658. In the instant case, the record shows that the robbery took place outside under a streetlight, and that "the lighting was good." R.R. Vol. 3, p. 29. The complainant was wearing his glasses during the robbery and had "seen everything." *Id.*, p. 30. He was certain of his identification of petitioner at the show-up identification because ,"Actually [he] still remember[ed] seeing his face." *Id.* Although the complainant lost his glasses in the shrubs after the robbery, he could see "pretty good" without them and was able to see and identify petitioner sitting in the police car. *Id.*, p. 31. The complainant did state, however, that he identified petitioner walking down the street because of the gun he was carrying. *Id.* The complainant testified at trial that, "Like I said, when he actually pulled the gun on me, we wasn't that far apart. And I remembered his face. I was terrified, but I still remembered his face." *Id.*, p. 32. The complainant stated that he had looked at petitioner during the robbery for about five or ten minutes. *Id.*, p. 39. He described the robber to the police as a Hispanic male of medium weight and wearing a shirt. *Id.*, p. 39-40. He identified the gun the robber had held as a Tech-9; petitioner was carrying a Tech-9 when he was arrested. *Id.*, 18, 38. The complainant stated he identified petitioner in the show-up identification about forty-five minutes after the offense, although a police officer stated it was approximately an hour to an hour and a half after the offense. *Id.*, pp. 33, 69. The police officer testified that the complainant identified petitioner "immediately" and "emphatically." *Id.*, p. 59. The record does not show that complainant's in-court identification process was unduly suggestive and that an objection would have been granted. Petitioner fails to demonstrate that, but for

counsel's failure to object to the in-court identification, the result of his trial would have been different.

Petitioner further asserts that counsel should have objected to complainant's out-of-court identification of him from the scene of the offense (the "show-up identification"). As grounds, petitioner states that the location was heavily populated by Hispanics, and that he was the only Hispanic presented to the complainant for identification. For the same reasons as set out above regarding the in-court identification process, the record does not indicate that the show-up identification was unduly suggestive and that an objection would have been granted. Petitioner fails to demonstrate that, but for counsel's failure to object to the out-of-court identification, the result of his trial would have been different.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

D.   Selecting members of the jury in a discriminatory manner

Petitioner avers that counsel was deficient because she "selected the jury in a discriminatory manner." (Docket Entry No. 13, p. 5.) A review of petitioner's state habeas proceedings reveals that petitioner did not raise this issue on state collateral review or direct appeal. Consequently, the issue is unexhausted and, at this point, procedurally barred.

18

Regardless, petitioner fails to provide probative summary judgment evidence substantiating his claim.  In his response to the motion for summary judgment, petitioner argues only the following:

> I specifically asked counsel for hispanics on the jury, but she said no because "hispanics are too harsh on crime.'  What more do I have to prove? Look at counsel's track record.

*Id.*  No probative evidence of counsel's alleged statement appears in the record.  Even assuming counsel made such statement, petitioner fails to show that counsel's actions regarding jury selection constituted an unreasonable trial strategy or tactic, and that, but for counsel's deficient performance, the result of the trial would have been different.

The state habeas court found that petitioner failed to meet his burden of proof under *Strickland*, and that the totality of trial counsel's representation was sufficient to protect petitioner's right to reasonably effective assistance of counsel.  *Ex parte Ramirez*, p. 42. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

E.      <u>Conflict of interest</u>

Petitioner claims that trial counsel's failures to investigate the case, present the omitted alibi witnesses, suppress his statement, strenuously challenge his identification by

the complainant, and otherwise show that she believed in his innocence, demonstrate an actual conflict of interest in her representation of him.

In rejecting this claim on collateral review, the trial court made the following relevant finding:

> 2.   Because Applicant fails to allege sufficient facts which, even if true, would show that any alleged conflict of interest in the primary case had an adverse effect on specific instances of counsel's performance, Applicant cannot show that he was denied the effective assistance of counsel due to any conflict of interest.

*Ex parte Ramirez*, p. 41 (citation omitted). The Texas Court of Criminal Appeals relied on this finding in denying habeas relief. *Id.*, at cover.

To establish an actual conflict of interest, a petitioner must establish either that his defense counsel represented multiple parties with defenses adverse to his own, or that other conflicts impinged on the attorney's loyalty to the petitioner. *See Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995). Petitioner here claims a conflict of the latter type, and he must demonstrate that, but for the conflict between counsel's self-interests and petitioner's interests, there is a reasonable probability that the result of the trial would have been different. *See Beets v. Collins*, 986 F.2d 1478, 1484 (5th Cir. 1993). However, petitioner's conclusory claims of "conflict" evince nothing more than his dissatisfaction and disagreement with counsel's professional decisions regarding trial strategy and her perceived disbelief of his actual innocence. Petitioner does not establish that, but for these alleged

disagreements and counsel's performance, there is a reasonable probability that the result of the trial would have been different.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or other federal law, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## V.  TRIAL COURT ERROR

Petitioner asserts that the trial court improperly excluded evidence of the complainant's specific criminal conduct, and erroneously admitted petitioner's statement into evidence without first determining its voluntariness. Respondent argues that these claims are procedurally defaulted and barred from consideration by this Court. Petitioner did not respond to this argument in his opposition to the motion for summary judgment.

Petitioner did not raise these two issues on direct appeal. The state habeas court rejected the claims, and made the following relevant findings:

> 7.    Applicant's challenge to the trial court's refusal to permit a more thorough cross examination of the complainant regarding the details of a previous conviction need not be considered since Applicant failed to raise this 'record claim' on direct appeal.
>
> 8.    Applicant's challenge to the trial court's admission of Applicant's statement need not be considered since Applicant failed to raise this 'record claim' on direct appeal.

*Ex parte Ramirez*, pp. 42-43 (citations omitted).  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.  *Id.*, at cover.

It is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).  Moreover, when a state court has explicitly relied on a procedural bar to deny relief, a state inmate may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice attributable to the default, or that failure to consider the claim will result in a miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Amos*, 61 F.3d at 338.  By "miscarriage of justice" is meant that the petitioner is actually innocent of the crime for which he was convicted.  *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

Because the last state court to consider these claims expressly and unambiguously based its denial of relief on a state procedural default, these claims are barred from federal review at this juncture.  Petitioner neither argues nor presents probative summary judgment evidence of "cause" for the default and "prejudice."  Accordingly, these claims are barred from consideration by this Court, and respondent is entitled to summary judgment dismissal of the claims.

22

## VI.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  A certificate of appealability is **DENIED**.  Any and all pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 14th day of January, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE